## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF FLORIDA
### Pensacola Division

|  |  |  |
|---|---|---|
| **VICTOR S. VASILE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** 3:11 cv 57 mcr.EMT |
| **EVENTS WORLDWIDE, INC.,** | ) | |
| **CYNTHIA WELLS, and RAYMOND** | ) | |
| **WELLS,** | ) | |
| | ) | |
| **Defendants.** | | |

## COMPLAINT

Plaintiff, Victor S. Vasile, files his complaint against defendants, Events Worldwide, Inc., Cynthia Wells, and Raymond Wells, and states as follows:

### PARTIES

1.     The plaintiff, Victor S. Vasile, is a resident of the State of Alabama (hereinafter "Vasile").

2.     The defendant, Events Worldwide, Inc., is or was a Florida corporation with its principal office in Santa Rosa County, Florida (hereinafter "EWI").

3.     The defendant, Cynthia Wells, is a citizen of the State of Florida and resides in Santa Rosa County, Florida.  She is the wife of Raymond Wells.

DOC\SHSV\169277\8\

 Filed0203'11UsDcFln3PM1215

4.     The defendant, Raymond Wells, is a citizen of the State of Florida and resides in Santa Rosa County, Florida.  He is the husband of Cynthia Wells.

## JURISDICTION

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as Cynth ia Wells and Raymond Wells are alleged to have violated the Racketeer Influenced Corruptions Act, 18 U.S.C. § 1962.

6.     The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Vasile is a citizen of the State of Alabama, Cynthia Wells and Raymond Wells are citizens of the State of Florida, EWI has its principal place of business in Florida, and the matter in controversy exceeds $75,000.

7.     The Court also has pendent jurisdiction over the state law claims because the facts giving rise to the federal claim are the same facts giving rise to the state law claims.

## VENUE

8.     Pursuant to 28 U.S.C. § 1391, the Northern District of Florida is the appropriate venue because (1) a substantial part of the events giving rise to the claims stated herein occurred in Santa Rosa County, Florida, (2) Cynthia Wells and Raymond Wells reside in Santa Rosa County, Florida, and (3) EWI's principal place of business is located in Santa Rosa County, Florida.

2

## FACTUAL ALLEGATIONS

9.     On or about October 2, 2001, EWI was incorporated in the State of Florida.  From that time until its dissolution, Cynthia Wells served as EWI's sole shareholder, sole director, and President.

10.     EWI conducted its business of buying and selling event tickets from the home of Cynthia Wells and Raymond Wells, which is located at 6969 Turnberry Circle, Navarre, Florida.

11.     On or before December 1, 2010, EWI was administratively dissolved by the Florida Secretary of State.

12.     On or about December 1, 2010, Cynthia Wells, as the sole shareholder and director of EWI, approved and adopted the Articles of Dissolution for EWI.

13.     On December 4, 2010, the Auburn University football team played in the Southeastern Conference Championship game and defeated the University of South Carolina football team.  As a result of Auburn University's victory, on or about December 5, 2010, Auburn University was announced to be one of the teams to play in the Bowl Championship Series National Championship Game (hereinafter the "National Championship") in Glendale, Arizona on January 10, 2011.

14.     On or about December 5, 2010, Vasile began looking for two (2) tickets to the National Championship.

3

15.     On or about December 6, 2010, Vasile identified two (2) tickets to the National Championship that were in section 128, Row 38 of the University of Phoenix Stadium (hereinafter the "Tickets"), the area where he wanted to sit, being offered for sale on EBay purportedly by EWI through its screen name "wealwaysdeliver." A true and correct copy of the offer for sale of the Tickets is attached hereto as Exhibit "A" (hereinafter the "Offer") and incorporated by reference herein.

16.     Tickets to a sporting event like the National Championship are unique as each ticket is specific to a certain section, row, and seat. Each seat provides a unique experience and perspective of the game being played, the pregame ceremonies, the halftime festivities, and the post game celebration.

17.     In deciding to engage in negotiations for the sale of the Tickets, Vasile reviewed the EBay reputation of EWI. As of December 6, 2010, EWI had engaged in more than 2,900 transactions on EBay buying and selling event tickets. As of December 6, 2010, EWI had a favorable rating exceeding 99%. Additionally, EWI had not had a negative review from a transaction in the six (6) months preceding December 6, 2010.

18.     Vasile relied upon the reputation of EWI in deciding to purchase the Tickets.

4

19.     On or about December 6, 2010, Vasile, while in Alabama, engaged in negotiations through electronic messages facilitated by EBay with agents, employees, and/or representatives of EWI, who were located in Florida, regarding the price of the Tickets. After Vasile submitted a counter-offer for the Tickets to the EBay screen name "wealwaysdeliver," agents, employees, and/or representatives purporting to act on behalf of EWI sent Vasile another counter-offer. In the final offer, agents, employees, and/or representatives purporting to act on behalf of EWI offered to sell Vasile the Tickets for $2,500.00.

20.     On or about December 6, 2010, Vasile accepted the offer from agents, employees, and/or representatives purporting to act on behalf of EWI to sell the Tickets for $2,500.00.

21.     After agreeing to the offer of $2,500.00, Vasile telephoned the number provided in the Offer on or about December 6, 2010.

22.     Vasile initially talked to Raymond Wells regarding the purchase of the Tickets. Vasile informed Raymond Wells that the Offer for $2,500 had been accepted, and Raymond Wells acknowledged the Offer for $2,500 had been accepted. Vasile then asked if he could pay for the Tickets by providing Raymond Wells with Vasile's credit card information. Raymond Wells agreed that Vasile could provide payment by providing such information.

5

23.     Raymond Wells transferred Vasile's telephone call to another agent, employee, and/or representative purportedly acting on behalf of EWI who took Vasile's credit card information and charged $2,500.00 from that credit card as payment for the Tickets.

24.     At the time Vasile purchased the Tickets, Vasile did not know and was not made aware by any agent, employee, and/or representative purporting to act on behalf of EWI that EWI had been dissolved and/or would be dissolved prior to the date when the Tickets were to be provided by EWI and/or its agents, employees, or representatives.

25.     Because Vasile was under the belief that the Tickets would be provided, he stopped looking for tickets to purchase to the National Championship.

26.     On or about December 16, 2010, EWI filed Articles of Reinstatement with the Florida Secretary of State.

27.     On or about January 3, 2011, Vasile telephoned the telephone number contained in the Offer regarding the location of the Tickets as they had not been delivered to Vasile. At the time Vasile called, he was in Pensacola, Florida for the funeral of his mother-in law.  During the telephone conversation, Vasile talked with Raymond Wells about meeting with him at EWI's office to pick up the Tickets.  Raymond Wells informed Vasile that he could not meet him because he

6

and the staff of EWI were in New Orleans, Louisiana to sell and distribute tickets to the Sugar Bowl.

28.     During the conversation with Vasile on January 3, 2011, Raymond Wells assured Vasile the Tickets would be provided; he also did not inform Vasile EWI had been dissolved during that conversation.

29.     On or about January 3, 2011, EWI's attorney drafted a letter that was delivered to Vasile on January 6, 2011 via Federal Express. A true and correct copy of the letter from EWI's attorney dated January 3, 2011 is attached hereto as Exhibit "B" and incorporated by reference herein.

30.     On or about January 5, 2011, Cynthia Wells drafted a letter that was delivered to Vasile via Federal Express along with the letter dated January 3, 2011. A true and correct copy of the letter from Cynthia Wells dated January 5, 2011 is attached hereto as Exhibit "C" and incorporated by reference herein.

31.     On or about January 3, 2011, tickets for seats at the National Championship were being offered for sale on the website known as StubHub, which is one of the largest ticket exchanges.

32.     On January 5, 2011, StubHub had listed on its website an offer for the sale of two (2) tickets located in section 128, row 39 (one row above the Tickets) to the National Championship for $16,668.00 plus a 10% service charge

7

($1,666.80). A true and correct copy of said offer for sale is attached hereto as Exhibit "D" and incorporated by reference herein.

33. On January 6, 2011, StubHub sold out of tickets to the National Championship, and no tickets for the National Championship were available for purchase through StubHub.

34. In addition to promising to sell the Tickets to Vasile, agents, employees, and/or representatives purporting to act on behalf of EWI promised to sell tickets to the National Championship to other individuals.

35. At or about 9:35 a.m. CST, December 1, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide three (3) tickets to the National Championship for $2,047.00 to a person identified by the screen name "gggcharlie." Said person has indicated the tickets that were promised were not delivered.

36. At or about 5:54 p.m. CST, December 4, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide two (2) tickets to the National Championship for $2,268.00 to a person identified by the EBay screen name "mamasocks." Said person has indicated the tickets that were promised were not delivered.

8

37. At or about 7:37 p.m. CST, December 4, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide two (2) tickets to the National Championship for $1,680.00 to a person identified by the EBay screen name "jennyork." Said person has indicated the tickets that were promised were not delivered.

38. At or about 9:37 p.m. CST, December 4, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and using EWI's EBay screen name and reputation promised to provide two (2) tickets to the National Championship for $1,680.00 to a person identified by the screen name "lkingold." Said person has indicated the tickets that were promised were not delivered.

39. At or about 12:40 p.m. CST, December 5, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide two (2) tickets to the National Championship for $2,700.00 to a person identified by the EBay screen name "bigshow70." Said person has indicated the tickets that were promised were not delivered.

40. At or about 10:40 p.m. CST, December 5, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide a ticket to the National

9

Championship for $800.00 to a person identified by the EBay screen name "mmm beer." Said person has indicated the tickets that were promised were not delivered.

41. At or about 9:16 p.m. CST, December 6, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide four (4) tickets to the National Championship for $3,400.00 to a person identified by the screen name "joe61022." Said person has indicated the tickets that were promised were not delivered.

42. At or about 11:07 p.m. CST, December 6, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI and and using EWI's EBay screen name and reputation promised to provide four (4) tickets to the National Championship for $3,900.00 to a person identified by the screen name "ringo51." Said person has indicated the tickets that were promised were not delivered.

43. Beginning on or about November 22, 2010 and continuing through December 10, 2010, agents, employees, and/or representatives purporting to act on behalf of EWI entered into approximately twenty-nine (29) separate transactions with Gotickets, Inc. d/b/a Gotickets.com (hereinafter "Gotickets") in which agents, employees, and/or representatives purporting to act on behalf of EWI promised to

10

provide tickets to the National Championship to Gotickets and/or third parties in consideration of the aggregate sum of $74,075.00. During negotiations between Gotickets and agents, employees, and or representatives purporting to act on behalf of EWI, the same agents, employees, and/or representatives acting on behalf of EWI told Gotickets that they had tickets to the National Championship and/or had the right to possess tickets to the National Championship.

44. The tickets promised to Gotickets by the agents, employees, and/or representatives of EWI were never provided to Gotickets as EWI and agents, employees, and representatives purporting to act on behalf of EWI never possessed said tickets or had the right to possess said tickets.

45. In addition to the persons identified above, agents, employees, and/or representatives purporting to act on behalf of EWI and using EWI's EBay screen name and reputation entered into other fraudulent online transactions regarding the sale of tickets to the National Championship with other parties.

46. As of December 1, 2010, Cynthia Wells and/or Raymond Wells knew that EWI was dissolved and/or would be dissolved prior to completing their obligations to provide tickets to the National Championship.

## COUNT I: BREACH OF CONTRACT
### (Raymond Wells and Cynthia Wells)

47. Vasile adopts and incorporates paragraphs 1 through 46 of the complaint, as if set forth fully herein.

11

48.     On or before December 6, 2010, EWI was dissolved.

49.     Raymond Wells and/or Cynthia Wells promised to provide the Tickets to Vasile in consideration of \$2,500.00.

50.     Raymond Wells and/or Cynthia Wells approved of and/or ratified the contract to provide Tickets to Vasile in consideration of \$2,500.00.

51.     On January 5, 2011, Cynthia Wells informed Vasile that the Tickets would not be provided to Vasile as promised.

52.     Cynthia Wells and Raymond Wells failed to provide the Tickets as promised.

53.     As of January 5, 2011, the Tickets were valued in excess of \$18,334.80.

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in his favor and against Cynthia Wells and Raymond Wells for compensatory damages, interest, costs, and such other relief as he may be entitled.

## COUNT II: BREACH OF CONTRACT
## (EWI)

54.     Vasile adopts and incorporates paragraphs 1 through 53 of the complaint, as if set forth fully herein.

55.     Alternatively and to the extent EWI was a corporation in good standing and entitled to do business on December 6, 2010, on January 5, 2011, EWI breached the contract to provide the Tickets to Vasile.

12

**WHEREFORE, PREMISES CONSIDERED,** in the alternative, Vasile requests judgment in his favor and against EWI for compensatory damages, interest, costs, and such other relief as he may be entitled.

## COUNT III: FRAUDULENT CONCEALMENT
### (Raymond Wells)

56.     Vasile adopts and incorporates paragraph 1 through 55 of the complaint as if set forth fully herein.

57.     On January 3, 2011, Raymond Wells told Vasile the Tickets would be provided as had been previously promised.

58.     However, on January 3, 2011, Raymond Wells knew the Tickets would not be provided as promised.

59.     Vasile relied on Raymond Wells' assurance that the Tickets would be provided.

60.     On January 3, 2011, tickets to the National Championship remained for sale on StubHub.

61.     By the time Vasile was informed the Tickets would not be provided as promised, January 6, 2011, tickets to the National Championship were not available for sale on StubHub.

62.     Raymond Wells's concealment of material facts injured Vasile as he was not provided the Tickets.

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in his favor and against Raymond Wells for compensatory and punitive damages, interest, costs, and such other relief as he may be entitled.

## COUNT IV: FRAUD IN THE INDUCEMENT
### (Cynthia Wells and Raymond Wells)

63. Vasile adopts and incorporates paragraphs 1-62 of the complaint as if fully set forth herein.

64. At the time Cynthia Wells and/or Raymond Wells posted, drafted, ratified, and/or approved of the Offer on EBay using EWI's screen name and reputation, they knew that EWI had been dissolved and/or would not be in existence by the time the Tickets were to be provided.

65. Raymond Wells and/or Cynthia Wells intentionally used EWI's then sterling reputation to induce Vasile to purchase the Tickets.

66. Vasile relied upon the reputation of EWI in deciding to purchase the Tickets.

67. If Vasile knew that EWI was no longer in existence and/or would not be in existence at the time the Tickets were to be delivered, he would not have entered into negotiations to purchase the Tickets and/or purchased the Tickets.

68. Vasile was injured as the Tickets were not provided.

14

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in his favor and against Raymond Wells and/or Cynthia Wells for compensatory and punitive damages, interest, costs, and such other relief as he may be entitled.

## COUNT V: NEGLIGENT MISREPRESENTATION
### (Cynthia Wells and Raymond Wells)

69.    Vasile adopts and incorporates paragraphs 1 through 68 as if fully set forth herein.

70.    In the Offer, Cynthia Wells and/or Raymond Wells stated they would provide the Tickets.

71.    At the time Cynthia Wells and/or Raymond Wells made the Offer, Cynthia Wells and/or Raymond Wells knew they did not have possession of the Tickets and it was possible that they would never possess the Tickets and/or have the right to possess the Tickets.

72.    Cynthia Wells ratified and/or approved the Offer.

73.    Cynthia Wells and/or Raymond Wells owed Vasile the duty to be honest, candid, forthcoming, and not to mislead in making the Offer.

74.    Cynthia Wells and/or Raymond Wells breached their duty as the Offer stated in bold and in all capital letters, "all bowl game tickets will be provided week of game or sooner" and "as witnessed by our feedback, we do as we promise" despite knowing it was possible the Tickets would not be provided.

15

75.     Vasile was injured by believing the Offer, which caused him to purchase the Tickets that were never provided as promised.

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in his favor and against Raymond Wells and/or Cynthia Wells for compensatory damages, interest, costs, and such other relief as he may be entitled.

## COUNT VI: CONSPIRACY
### (Cynthia Wells and Raymond Wells)

76.     Vasile adopts and incorporates paragraphs 1-75 as if fully set forth herein.

77.     Cynthia Wells and Raymond Wells operated in concert to:

   a. post a misleading advertisement in the hope of inducing individuals to purchase the Tickets,

   b. mislead Vasile into believing EWI was in existence and would continue to be in existence throughout the performance of the contract for the Tickets,

   c. conceal from Vasile material facts regarding the delivery of the Tickets, and

   d. accept money for the Tickets, which they did not possess or have the right to possess.

78.     Because of the acts of Cynthia Wells and Raymond Wells, Vasile was not provided the Tickets.

16

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in his favor and against Raymond Wells and/or Cynthia Wells for compensatory damages, interest, costs, and such other relief as he may be entitled.

## COUNT VII: RICO VIOLATION (18 U.S.C. § 1962(c))
### (Cynthia Wells and Raymond Wells)

79. Vasile adopts and incorporates paragraphs 1-78 as if fully set forth herein.

80. As of December 1, 2010, EWI, the enterprise, had several employees, including Cynthia Wells, Raymond Wells, and Candice Carden.

81. As of December 1, 2010, Cynthia Wells and Raymond Wells were associated with EWI, the enterprise. Cynthia Wells was the sole shareholder, sole director, and president of EWI. Raymond Wells was an employee of EWI and the husband of Cynthia Wells.

82. Cynthia Wells and Raymond Wells engaged in a pattern of racketeering activity by:

> a. fraudulently using EWI's EBay screen name and reputation when they engaged in interstate, online transactions to sell tickets to the National Championship to persons identified by the EBay screen names "mmm_beer," "bigshow70," "mamasocks," "jennyork," "lkingold," "joe61022," and

17

"gggcharlie" prior to entering into the contract to sell the Tickets to Vasile,

b.  fraudulently inducing Gotickets and other third parties into entering into approximately twenty-nine (29) interstate contracts for the sale of tickets to the National Championship from November 22, 2010 to December 10, 2010 through wire and/or telephone transmissions, and

c.  intentionally submitting fraudulent offers for the sale of tickets to the National Championship using interstate wire transmissions on online ticket exchanges and online auction web sites.

83.    Vasile and the persons identified by the EBay screen names "mmm_beer," "bigshow70," "ringo51," "mamasocks," "jennyork," and lkingold," "joe61022," and "gggcharlie" were not informed by Raymond Wells and/or Cynthia Wells that EWI no longer existed and/or would not exist at the time the contracts for the Tickets and other tickets to the National Championship, respectively, were due to be performed.

84.    When offering tickets for sale to the National Championship, Cynthia Wells and/or Raymond Wells via wire transmissions induced others to believe EWI was a valid corporation and would continue to be a valid corporation until the

contracts for the sale of National Championship tickets were completed even though they knew that EWI was not in existence and/or would not be in existence when the contracts were due to be performed.

85.    When offering tickets for sale to the National Championship, Cynthia Wells and/or Raymond Wells via wire transmissions induced others to believe they and/or the enterprise possessed and/or had the right to possess tickets to the National Championship.

86.    When offering tickets for sale to the National Championship, Cynthia Wells and/or Raymond Wells posted fraudulent statements online in an effort to induce individuals to purchase said tickets from them.

87.    Vasile has been injured by Raymond and Cynthia Wells' conduct. Cynthia Wells and Raymond Wells failed to provide the Tickets as promised.    On January 5, 2011, the dateO, the date Cynthia Wells informed Vasile that the Tickets would not be provided, the Tickets were worth in excess of $18,334.80.

88.    On or about January 6, 2011, one day after Cynthia Wells informed Vasile the Tickets would not be forthcoming, Cynthia Wells and Raymond Wells continued to use EWI's EBay screen name and reputation to try and sell tickets to the Master's Tournament at the Augusta National Golf Club.

19

**WHEREFORE, PREMISES CONSIDERED,** Vasile requests judgment in

his favor and against Raymond Wells and/or Cynthia Wells for treble damages,

interest, costs, and such other relief as he may be entitled.

Respectfully submitted this $3^{st}$ day of January, 2011.

Victor S. Vasile (ASB-9456-V62V)

911 Fagan Springs Drive
Huntsville, Alabama 35801
Tel: (256) 503-9556
Email: vsvasile@gmail.com

20

Exhibit No.____A____

Page 1 of ___2___ pages



MY STORE    ABOUT ME    POLICIES    FEEDBACK    CONTACT US    TODAY's SPECIAL

**QUANTITY**
2

**SECTION**
128

**ROW**
38

Tostitos BCS National Championship Game

University of Phoenix Stadium
1/10/11 - 6:00 PM

TICKET STUB

0060331147736

2 Tickets for Tostitos BCS National Championship Game on 1/10/11

**HOT EVENTS**

**Ticket Description**

This auction is for 2 Tickets to see
**Tostitos BCS National Championship Game**
at University of Phoenix Stadium on 1/10/11
**Notes: ROW MAY POSSIBLY BE UPGRADED**

These seats are located in
**Section: 128, Row: 38**

Excellent
Very Good
Good
Average

**Customer Reviews**
Click to view

FedEx

UNITED STATES
POSTAL SERVICE.

BBB

PayPal
FAST SECURE EASY

Tickets...

All seats are together unless otherwise stated.

If you are interested in purchasing similar seats or if you need more or less tickets than what is stated in this auction, please contact us so we can set up a separate eBay Buy it Now auction for you.

**Shipping Policy**

We Ship Domestically (USA) and Internationally

Tickets ship as soon as they are in hand. 95% of the time that means the same day you place the order. Sometimes, tickets will ship closer to the event date if we are still waiting on them to arrive.

If tickets are not in hand, we will inform you by the next business day. Due to ticket distribution, actual seat locations may change. Your tickets will NEVER be worse than what you bid on and they will always be together and unobstructed. There are times, especially for bigger events that tickets may have to be picked up at a convenient location on the day of the event. Please be aware

that almost 100% of all orders for tickets not yet in hand are
upgraded to better seats.  Sometimes this is a significant upgrade.
Please do not bid if these terms do not suit you.  This is just a part
of the process of receiving the tickets from our suppliers.  As
witnessed by our feedback, we do as we promise.

**ALL BOWL GAME TICKETS WILL BE DELIVERED WEEK OF
GAME OR SOONER.  BCS CHAMPIONSHIP AND SUGAR
BOWL COULD POSSIBLY BE AN ON-SITE PICK-UP IN
PHOENIX AND NEW ORLEANS, RESPECTIVELY**

If Tickets are not available to ship same day, we will add a note on
the invoice sent, otherwise: ***Tickets Ship Same Business
Day***

Electronic email delivery of eTickets is sometimes available.
Please note, this option is only for certain tickets and is not
available for every ticket and/or event.

We will only ship to PayPal confirmed addresses. Please do not
buy/submit an offer if you do not have a confirmed address.

Shipping Is Done Through FedEx. You Will Be Provided With A
Tracking Number As Soon As Your Tickets Ship After Payment Is
Received.

**FYI**

**Payment Policy**

* PayPal is the only method of payment. You can pay through
paypal using a credit card, debit card, or bank account.
* Payment must be made first for the auction to end.

* If the event is more than 7 days away payment must be received
within 48 hours of purchase or your offer being accepted. If the
event is less than 7 days away payment must be received within
24 hours.

If you can not pay within those time frames please do not
purchase or submit an offer.

**Contact US**

Our Office Hours Are
Monday - Friday: 9am - 6pm CST
Saturday: 9am - 2pm CST
850-450-8514

Copyright ListEasy 2009



Powered by
ListEasy

List tickets instantly with one click!

**McDONALD**
**FLEMING**
**MOORHEAD**
ATTORNEYS AT LAW

Exhibit No. ___B___
Page 1 of ___1___ pages

WILLIAM A. BOND
MATTHEW A. BUSH
EDWARD P. FLEMING
R. TODD HARRIS
BELINDA B. DE KOZAN
BRUCE A. McDONALD
STEPHEN R. MOORHEAD
J. D. SMITH
JOHN B. TRAWICK
KATHLYN M. WHITE

**JOHN B. TRAWICK**

*OF COUNSEL*
MICHAEL L. FERGUSON
WILLIAM J. GREEN

REPLY TO:
jbtrawick@pensacolalaw.com
Fax: (850) 477-4510

January 3, 2011

RE:   Events Wordwide, Inc.
      6969 Turnberry Circle
      Navarre, FL 32566

To Whom It May Concern:

I represent Events Worldwide, Inc. ("the Corporation"). Effective December 1, 2010, pursuant to Chapter 607, Florida Statutes, Articles of Dissolution were approved and adopted by the Corporation's sole shareholder, Cynthia Wells. No further business will be conducted by the Corporation, except insofar as may be necessary for the Corporation to wind up its affairs and liquidate its assets.

Any and all persons or organizations which have any claims against the Corporation should provide written notice to me, the Corporation's attorney, at the above-referenced address. Any such claim must include the full name and address of the claimant and describe the basis of the claim, amount of the claim, and the date on which the claim accrued.

Very truly yours,

John B. Trawick

Exhibit No._____ C_____
Page 1 of_____ 1_____ pages

January 5, 2011

Dear BCS Championship Purchaser,

I regret to inform you due to domestic and business reasons, Events Worldwide, Inc is unable to fulfill your order for the BCS Championship game on Jan 10, 2011. A number of instances occurred that cannot make this possible. Much of the fault lies with various suppliers not delivering tickets to us.

As indicated in the attached letter from the corporations attorney, Events Worldwide, Inc. has ceased operation. Under the circumstances, the corporation is unable to issue the ticket(s) that you purchased and it is therefore herby issuing a refund in the amount of your purchase, which is enclosed herewith in certified funds. Please direct all further correspondence to the corporation's attorney.

Thank You,

Cynthia Wells
President

**Stub**Hub!

Welcome, Sign in or Register

Sports   Concerts   Theater

Buy | Sell | My Account | Customer Support | 

Des Moines, IA  Change location

[ Enter team, artist, event, venue ]   All Categories   [Search]

Exhibit No._____ D_____
Page 1 of ___ 1 ___ pages

Home > Sports tickets > Football > NCAA Football > 2010 College Bowl > 2011 BCS National Championship Game > 2011 BCS National Championship Game Tickets (Auburn vs Oregon) tickets >

## Ticket details

# Welcome to the StubHub marketplace!

Fans buy tickets. Fans sell tickets. FanProtect™ Guarantees.

View all listings for this event

| | |
|---|---|
| **Event** | 2011 BCS National Championship Game Tickets (Auburn vs Oregon) Tickets | Monday, Jan 10, 2011 at 6:00 p.m. (MST) |
| **Location** | University of Phoenix Stadium in Glendale, AZ | Driving directions, parking & more |

Learn about StubHub

**Section Section - Main Premium North 128 | Row 39**

Time left to order: 1d 4h 29m

| | |
|---|---|
| Seats: | Not provided by seller |
| Quantity: | 2 |
| Delivery method: | Pickup - Event Day - $15.00 |
| | Pick up your tickets at a StubHub Last Minute Service Center |
| Delivery info: | Pick up your tickets before the event at the designated StubHub Last Minute Service Center (we'll give you the address before you place your order) |
| Price: | **$8,334.00 per ticket** |
| | Price set by the seller in U.S. dollars |

Enlarge map



[Next] | Back

### What the seller has to say

**Comments :** 35 yard line Auburn side;

### Notes from StubHub

- Nobody likes paying fees. We hope that by providing great customer service, convenient delivery options, and our FanProtect™ Guarantee, you won't mind ours quite so much.
- It's against the rules for sellers to include contact info in their ticket listings. To be covered by our FanProtect™ Guarantee, you must place your order on StubHub.
- Event time subject to change. Check local listings for exact start time. All sales are final.

Tickets | Sports Tickets | Football Tickets | NCAA Football Tickets | BCS Tickets | Rose Bowl Tickets | Sugar Bowl Tickets | Cotton Bowl Tickets | Fiesta Bowl Tickets | Orange Bowl Tickets | College Football Tickets

©2000-2011 StubHub, Inc. All rights reserved
Use of this website signifies your agreement to the User Agreement and Privacy Policy

You are buying tickets from a third party; neither StubHub nor per StubHub, Inc. is the ticket seller.
Ticket prices are set by sellers and may differ from face value. All sales are FINAL. All prices listed are in US dollars

About us | Jobs | Press box | Notifications | Partners | Corporate accounts | Sitemap



TRUSTe